IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

United States of America

    v.                                     Case No. 2:13-cr-199

Jason R. Rager

OPINION AND ORDER

    By judgment entered on April 21, 2014, defendant was sentenced to a term of incarceration of 144 months on Count 1 of the indictment, which charged defendant with the knowing receipt of visual depictions of child pornography in violation of 18 U.S.C. §2252(a)(2). Defendant was also sentenced to a term of 20 years supervised release. Defendant's proposed release date is October 8, 2023. See https://www.bop.gov/inmateloc/ (last visited December 16, 2020).

    On May 6, 2020, defendant filed a motion for appointment of counsel to file a motion for compassionate release under 18 U.S.C. §3582(c)(1)(A), as amended by the First Step Act of 2018, citing the risks posed by the COVID-19 pandemic and his efforts towards rehabilitation. See Doc. 42. The government opposed the motion due to defendant's failure to exhaust his administrative remedies. Doc. 44. Defendant's motion was denied without prejudice for failure to exhaust his administrative remedies. Doc. 45. On June 4, 2020, defendant filed a motion for compassionate release. Doc. 46. On June 5, 2020, the motion was denied without prejudice due to defendant's failure to exhaust his administrative remedies. Doc. 47.

    On July 13, 2020, defendant filed a motion to reconsider the denial of compassionate release. Doc. 48. The government filed a response on July 31, 2020. Doc. 50. The government conceded that

defendant had exhausted his administrative remedies, but argued that this court should defer to the process of the Bureau of Prisons ("BOP") for determining eligibility for release on home confinement under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), §12003(b)(2). The government further argued that defendant failed to show an extraordinary and compelling reason to release him due to his medical conditions, and that the statutory factors in 18 U.S.C. §3553(a) weigh against defendant's early release. Counsel was later appointed to represent the defendant. On September 28, 2020, counsel filed a supplemental motion on defendant's behalf. Doc. 53. The government filed a response in opposition on October 17, 2020, and defendant filed a reply. See Docs. 55 and 56. The court will now consider defendant's motions (Docs. 46, 48 and 53).

I. Standards for Compassionate Release

Under 18 U.S.C. §3582(c)(1)(A)(i), the court can reduce a sentence under §3582(c)(1)(A) if the court finds that "extraordinary and compelling reasons warrant such a reduction[.]" 18 U.S.C. §3582(c)(1)(A)(i). The court must also consider the factors set forth in 18 U.S.C. §3553(a) to the extent that they are applicable. §3582(c)(1)(A).[1] District courts may deny relief

---

[1] Section 3582(c)(1)(A) further provides that the court must find "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]" 18 U.S.C. §3582(c)(1)(A). However, the Sixth Circuit has held that the policy statement contained in United States Sentencing Guidelines §1B1.13 do not apply to cases in which an inmate files a motion for compassionate release, and that district courts have full discretion to define "extraordinary and compelling" without consulting the policy statement. See United States v. Jones, __ F.3d __, 2020 WL 6817488, at *7, *9 (6th Cir. Nov. 20, 2020).

2

under §3582(c)(1)(A) based upon the court's discretionary balancing of the §3553(a) factors even if extraordinary and compelling reasons would otherwise justify relief. United States v. Ruffin, 978 F.3d 1000, 1008 (6th Cir. 2020). If, after weighing the §3553(a) factors, the court decides that the motion is well taken, the court "may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)[.]" §3582(c)(1)(A). The grant of compassionate release is at the discretion of the court. United States v. Kincaid, 802 F. App'x 187, 188 (6th Cir. 2020).

II. Defendant's Request for Release

Defendant has presented information concerning the problems with COVID-19 experienced by the inmates at FCI Elkton, where defendant is incarcerated. FCI Elkton has reported nine inmate deaths due to COVID-19. See https://www.bop.gov/coronavirus (last visited December 16, 2020). However, §3582(c)(1)(A) "does not constitute a get-out-of-jail card." United States v. Brady, S2 18 Cr. 316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020). Rather, "compassionate release motions amid the COVID-19 pandemic have required a 'fact-intensive' inquiry ... made in the 'unique circumstances' and 'context' of each individual defendant." Id., citing United States v. Shakur, No. 82 CR 312 (CSH), 2020 WL 1911224, at *1 (S.D.N.Y. Apr. 20, 2020) and United States v. Hart, 17 Cr. 248 (VSB), 2020 WL 1989299, at *6 (S.D.N.Y. Apr. 27, 2020)).

Defendant argues that he has a serious risk from COVID-19 due to his medical conditions. Defendant is 46 years old. He has submitted medical records, see Doc. 46, indicating a single case of

pneumonia in 2017, which was resolved (Exs. D and E); isolated complaints of wheezing due to asthma (Exs. F and M); a urologist's report concerning defendant's urological complaints which revealed a wide open prostatic urethra and very small prostate, with no evidence of obstruction (Ex. G); a medication list which included an inhaler and nasal spray (Ex. H); records concerning defendant's participation in group psychological counseling sessions from September 10, 2015, through March 12, 2020 (Ex. L); two incidents of dizziness and balance problems in February, 2018, with no diagnosis being given (Ex. M); and a report of a cyst of defendant's chin in January, 2020 (Ex. N).  However, defendant relies primarily on his asthma and his history of smoking two packs of cigarettes per day for 24 years.

The government acknowledges the opinion of the Centers for Disease Control ("CDC") that persons with moderate to severe asthma might be at a higher risk of developing serious symptoms with COVID-19.  See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#asthma (last visited December 16, 2020).  However, the government argues that defendant has not established that his asthma is moderate to severe.  The presentence investigation report ("PSR") in this case indicates that defendant reported to the probation officer that he was in good health but that he had high blood pressure at times.  No mention is made of asthma or any problems related to tobacco use.  A BOP list of defendant's health conditions notes exercise-induced asthma.  Doc. 46, Ex. C.  During a sick call on April 6, 2017, defendant reported that he had a remote history of daily inhaler use until age 13 with sports, and an inhaler was

4

prescribed.  Doc. 46, Ex. D.  On April 27, 2017, defendant reported that he used his inhaler once daily, and continues to get intermittent wheezing usually induced by exercise.  Doc. 46, Ex. F. On May 9, 2019, defendant saw a provider for medication renewal. He reported that he uses his inhaler once or twice a week and denied cough, wheezing or diurnal symptoms.  Doc. 46, Ex. M.  The court concludes that this record does not establish that defendant suffers from moderate to severe asthma which might place him at an increased risk from COVID-19.  See United States v. Hicks, No. 1:16-cr-354, 2020 WL 6273936, at *2 (N.D. Ohio Oct. 26, 2020)(defendant, whose asthma was well controlled, failed to show that he suffers from moderate to severe asthma warranting compassionate release).  Even assuming that defendant's asthma is moderate to severe, it is well managed.

   Defendant also relies on his previous history of smoking.  The CDC has reported that being a current or former smoker increases the risk of severe illness from COVID-19.  See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.#smoking (last visited December 16, 2020).  A June 11, 2014, BOP medical record refers to defendant's history of smoking two packages a day for twenty-four years.  Doc. 56-1.  However, the medical records contain no report of any adverse physical symptoms which defendant is currently experiencing or has experienced in the past due to his smoking.  There is no evidence that defendant has smoked since being confined in a federal institution in 2014.  See Brooks v. Menifer, No. CV07-0131-A, 2009 WL 6006283, at *6 (W.D. La. Sept. 25, 2009)(noting that the BOP adopted a no-smoking policy making

5

all BOP facilities smoke-free environments as of March 1, 2006). In United States v. Tranter, ___ F. Supp.3d ___, 2020 WL 3841268, at *4 (N.D. Ind. July 8, 2020), the court rejected defendant's argument that his status as a former smoker placed him at increased risk, noting that defendant had identified no adverse health effects resulting from his smoking past and that, according to the CDC, his risk of disease from smoking dropped every day he remained smoke-free)(citation omitted).

    The government further observes that the COVID-19 outbreak at FCI Elkton appears to have abated. FCI Elkton recently reported that 3 inmate and 21 staff members currently have COVID-19, and that, since the beginning of the COVID-19 pandemic, 894 inmates and 54 staff have recovered. See https://www.bop.gov/coronavirus (last visited December 16, 2020). Although defendant questions the accuracy of these statistics, the court notes that the Sixth Circuit concluded that the BOP "has 'responded reasonably to the risk'" of COVID-19 at Elkton by taking preventative measures, including screening for symptoms, educating staff and inmates about COVID-19, cancelling visitation, quarantining new inmates, implementing regular cleaning, and providing disinfectant supplies and masks. Wilson v. Williams, 961 F.3d 829, 841 (6th Cir. 2020)(citation omitted). See also Tranter, 2020 WL 3841268, at *4 (holding that Elkton's progress in fighting the virus, coupled with defendant's lack of aggravating medical conditions due to his status as a former smoker, did not compel release).

    Defendant plans upon his release to reside with his father in rural Southwest Ohio. By way of comparison, the Ohio Department of Health reports that as of December 16, 2020, Southwestern Ohio has

6

reported: 43,939 COVID-19 cases in Hamilton County; 21,940 cases in Butler County; 12,739 cases in Warren County; 9,366 cases in Clermont County; and 29,982 cases in Montgomery County. The defendant's risk of infection may be no worse in prison than the risk he would face if he is released to the community.

Defendant's medical conditions, viewed in the context of COVID-19, do not constitute an "extraordinary and compelling reason" for his early release.

III. §3553(a) Factors

The court is also required to consider the relevant factors in §3553(a). This was a serious offense. The guideline range in defendant's case was 262 to 327 months. In calculating defendant's guideline range, the probation officer applied enhancements for possession of material involving a minor less than 12 years old, the use of peer to peer software to download child pornography and make it available for sharing, possession of sadistic or masochistic conduct, the use of a computer, reports that defendant had sexually abused his two daughters, and the number of images (975). Because the maximum statutory penalty for the offense of conviction was 240 months, this became the guideline range. The court imposed a sentence of 144 months, noting as mitigation the fact that defendant was repeatedly subject to sexual abuse as a child. The sentence of 144 months represented a substantial downward variance from the guideline range, but was 24 months more than the mandatory minimum sentence of 120 months.

As to the history and characteristics of the defendant, the defendant had a prior conviction in 2001 for aggravated assault, but that offense did not receive any criminal history points, and

defendant fell in Criminal History Category I.  The PSR reported that defendant's father was an alcoholic and a drug user; that defendant's mother had mental health problems, that he was abused for years by an uncle, and that he was raped by three classmates when he was in high school.  Defendant has a lengthy history of substance abuse and alcoholism dating back to his teenage years.  The PSR reported that he has used marijuana, cocaine base, methamphetamines, and hallucinogens, and that from age 23 to his arrest on this offense, he consumed a case of beer per day.  Defendant was previously employed in restaurants.

Defendant argues that he has made substantial efforts towards rehabilitation while incarcerated.  He has produced evidence that he successfully completed a program of paralegal studies with the Blackstone Career Institute (see Doc. 46, Exs. I and J) and that he took courses through the Cherith Bible Institute from May 21, 2019 to April 21, 2020 (Doc. 46, Ex. K).  He participated in group therapy sessions from September 10, 2015, through March 12, 2020, although these sessions did not include sex offender therapy (see Doc. 46, Ex. L).  He completed his GED, worked as a lead unit orderly, and incurred no disciplinary infractions. Doc. 46, Ex. O.  Defendant states in his motion that he completed a 12-hour substance abuse program and that he has signed up for the RDAP program, but that he was unable to participate in a sex offender treatment program.  Doc. 46.  Upon his release, defendant intends to reside with his father and to assist him in his horse carriage repair business.  He also wants to establish a small organic farm.  He reports that his daughters are in college and reside in their own homes, and that his son will be 17 years old.

Defendant has also submitted a form from FCI Elkton noting that he was not eligible for release under the First Step Act, but that his recidivism risk level was "minimum." Doc. 46, Ex. A. Defendant argues that the BOP's conclusion that he poses a minimum risk of recidivism supports his motion for release. However, this form is entitled to little or no weight. It does not indicate who made this determination, nor does it provide the information relied on or the reasoning employed in reaching this conclusion.

The government argues that the seriousness of the offense conduct weighs against the defendant's early release. The PSR reveals that defendant's IP address was detected on the G Nutella Network, a file-sharing network. When agents arrived to execute the search warrant at defendant's residence, defendant admitted that he used peer to peer programs on his computer, but denied that there were any child pornography files on his computer at that time, claiming that he had deleted them. The three minor children at the residence reported that they had seen child pornography on the computer. The forensic examination of defendant's computer revealed 13 digital child pornography movies which depicted prepubescent girls from 6 to 13 years of age engaging in sexually explicit conduct with adult men. The PSR reported that defendant had sexually abused his two daughters for years, and that he also engaged in sexual conduct with two of his daughter's friends, ages 9 and 13 years old, who spent the night with his daughters. The court continues to believe that the sentence of 144 months imposed in this case, which was a lenient sentence substantially below the guideline range, is necessary to reflect the seriousness of the offense, to promote respect for the law, and to provide just

punishment.  Releasing defendant now would result in a substantially shortened sentence which would not reflect the seriousness of the offense, promote respect for the law, or provide just punishment.

The shortened sentence sought by defendant would also not afford adequate deterrence or protect the public from more crimes by the defendant.  Although defendant claims to be rehabilitated, he has not participated in sex offender therapy.  Courts have noted that Congress has found that there is a high rate of recidivism among convicted sex offenders, especially child sex offenders.  See Hicks, 2020 WL 6273936, at *2 (citing United States v. Pugh, 515 F.3d 1179, 1201 (11th cir. 2008) and United States v. Allison, 447 F.3d 402, 405-06 (5th Cir. 2006)).  Defendant reports that he completed a 12-hour substance abuse program.  However, in light of defendant's significant and lengthy history of substance abuse, his completion of this program does not convince the court that he will not relapse if he is released.

The PSR reported that defendant was involved not only in the possession of child pornography, but also committed hands-on acts of sexual abuse involving minors over a substantial period of time.  This pattern of activity increases concerns about recidivism and the need for deterrence, and indicates that defendant poses a significant risk of potential future crimes against the public.  His asthma and his status as a former smoker would not prevent him from engaging in similar conduct if he is released now.  Although defendant suggests that he can be released on home confinement under the supervision of a probation officer, this would not lessen his danger to the community, as his offense of conviction required

10

no more than a computer and access to the internet. Further, as one court noted, the COVID-19 pandemic and the CDC's recommended guidelines will make it more difficult to monitor defendant's behavior on home confinement. See United States v. Miezin, No. 1:13CR15, 456 F.Supp.3d 911, 916 (N.D. Ohio 2020)(because defendant could engage in his prior criminal conduct involving child pornography at any time from his place of home confinement, effectively monitoring him would require repeated visits to his home, thus enhancing the risk of the spread of COVID-19 to the defendant, anyone living with him, and the individuals charged with monitoring his compliance).

The court concludes that the §3553(a) factors warrant denying defendant's motion for a reduced sentence. Even assuming, arguendo, that defendant's health conditions are sufficient to constitute an "extraordinary and compelling reason" for a sentence reduction, that reason is outweighed by the statutory factors which militate against defendant's early release.

IV. Conclusion

In accordance with the foregoing, defendant's motions for compassionate release (Docs. 46, 48 and 53) are denied.

Date: December 17, 2020         s/James L. Graham
                                James L. Graham
                                United States District Judge

11